UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ENESA MEHIC,<br><br>        Plaintiff,<br><br>    v.<br><br>ALLSTATE PROPERTY AND<br>CASUALTY INSURANCE<br>COMPANY,<br><br>        Defendant. | CIVIL ACTION NO.<br>1:20-cv-03949-JPB |

# ORDER

Before the Court is Defendant Allstate Property and Casualty Insurance Company's ("Allstate") Motion for Summary Judgment. ECF No. 9. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

## I.   BACKGROUND

Plaintiff Enesa Mehic ("Mehic") filed a complaint for breach of contract alleging that she was insured under a policy issued by Allstate at the time she lost her home in a fire, but Allstate denied her request for benefits.

The record shows that Mehic purchased a home located at 872 Pin Oak Way, Lawrenceville, Georgia in 2008 (the "Home"). ECF No. 13-3, ¶ 2. Allstate provided a Homeowners Insurance Policy ("Policy") for the Home beginning in

2008, and Mehic thereafter paid annual premiums to Allstate, including on December 3, 2019.  *Id*.

Mehic states that she lived in the Home until mid-2017, when she left the Home and moved in with her son.  *Id.* ¶ 3.  Her nephew and his family subsequently rented the Home from Mehic until mid-2019.  *Id*.; ECF No. 14, ¶ 14.  After the nephew moved out, Mehic split her time between the Home and her son's home, which is nearby.  ECF No. 13-3, ¶ 3.  It is undisputed that Mehic never notified Allstate of any of these changes in use of the Home.

On February 29, 2020, a fire occurred at the Home, and Mehic notified Allstate of the fire.  ECF No. 14, ¶¶ 2-3.  Allstate asserts that during its investigation of the fire, it observed that "the [Home] was . . . riddled with evidence of vandalism, including graffiti, broken windows, and generalized intentional damage to the [Home]."  ECF No. 9-1 at 6.  Allstate's investigation concluded that:  (1) at the time of the fire, the Home had been vacant and unoccupied for more than thirty days; (2) Mehic did not "reside" at the Home at the time of the fire and had not resided at the Home for over a year; and (3) the fire was intentionally set by vandals.  *Id*. at 5.

Allstate further asserts that Stephen Knowles, a Gwinnett County Department of Fire and Emergency Services investigator, conducted a "parallel,

2

independent investigation into the origin and cause of the [f]ire," ECF No. 9-5, ¶ 5, and likewise concluded that the fire was intentionally set by vandals; the Home was vacant and unoccupied at the time of the fire; and the owner did not reside at the Home at the time of the fire, ECF No. 10-1, ¶ 5.

Allstate contends it is not required to cover the loss, and it is entitled to summary judgment on Mehic's claims for three independent reasons:  (1) Mehic did not reside at the Home when the claimed loss occurred; (2) Mehic failed to notify Allstate of changes in use or occupancy of the Home, which is a condition precedent to coverage; and (3) the Policy excludes coverage for vandalism of a vacant home.  ECF No. 9-1 at 2.

Mehic disputes that the Home was vacant and unoccupied for any time between December 2012 and the day of the fire.  ECF. No. 14, ¶ 6.  She states that although the Home did not have water service at the time of the fire, it had electric service, and she had personal items there.  *Id*. ¶¶ 7, 9.  Mehic explains that the Home appeared vacant because she was in the process of remodeling it.  ECF No. 13 at 3.

Mehic further argues that the changes in the use of the Home that occurred prior to the fire are immaterial to coverage for the fire loss because the "legally salient period   . . . is the 30 days prior to the fire." *Id*. at 3.  Mehic also asserts that

3

"there is no credible evidence" to explain Allstate and Knowles' conclusion that the fire was caused by vandalism. ECF No. 14, ¶ 11.

In sum, Mehic contends that summary judgment is inappropriate because (1) the Home was not vacant or unoccupied during the thirty days immediately preceding the fire; (2) her failure to notify Allstate regarding the change in use of the Home is irrelevant since it occurred well before the fire; and (3) the fire was not the result of vandalism. ECF No. 13 at 2-5.

As relevant here, the Policy contains the following provisions:

> **Insuring Agreement**
>
> In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

ECF. No. 9-2 at 13 (emphasis in original).

> **Suit Against Us**
>
> No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

*Id*. at 30.

> **Losses We Do Not Cover Under Coverages A and B**
>
> We do not cover loss to the property described in Coverage A - Dwelling Protection or Coverage B Other Structures Protection consisting of or caused by:

4

\* \* \*

20. Vandalism or Malicious Mischief if your dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A dwelling under construction is not considered vacant or unoccupied.

*Id*. at 18.

## II. DISCUSSION

### A. Legal Standard

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted). A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court … is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* In carrying this burden, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

Also, "[w]hen the nonmovant has testified to events, [the court] do[es] not . . . pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) . . . . Instead, when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.  Analysis

Georgia law[1] is clear that "construction [of a contract] is a matter of law for the court." *Envision Printing, LLC v. Evans*, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016); *see also Gans v. Ga. Fed. Sav. & Loan Ass'n*, 347 S.E.2d 615, 618 (Ga. Ct. App. 1986) ("It is ordinarily the duty of the court to interpret a contract as a matter of law").  Insurance contracts are treated like any other contract and "are interpreted by [the] ordinary rules of contract construction." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. 1998).

> Construction of a contract requires three steps:
>
> First, the trial court must decide whether the language is clear and unambiguous.  If it is, no construction is required, and the court simply enforces the contract according to its clear terms.  Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity.  Finally, if the ambiguity remains after applying the rules of construction, the issue

---

[1] The Policy is governed by Georgia law.  ECF No. 9-2 at 15.

of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Envision Printing*, 786 S.E.2d at 252 (quoting *General Steel v. Delta Bldg. Sys.*, 676 S.E.2d 451, 453 (Ga. Ct. App. 2009)).

With respect to the first step, "[t]he court [initially] looks to the four corners of the agreement to ascertain the meaning of the contract from the language employed." *Brogdon v. Pro Futures Bridge Cap. Fund, L.P.*, 580 S.E.2d 303, 306 (Ga. Ct. App. 2003). In that analysis, "[w]ords generally [are ascribed] their usual and common signification." O.C.G.A. § 13-2-2(2). "[W]here the language of [the] contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court." *Ainsworth v. Perreault*, 563 S.E.2d 135, 140–41 (Ga. Ct. App. 2002); *see also Triple Eagle Assocs., Inc. v. PBK, Inc.*, 704 S.E.2d 189, 195–96 (Ga. Ct. App. 2010) (stating that "where the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity") (internal punctuation omitted); *Tripp v. Allstate Ins. Co.*, 584 S.E.2d 692, 694 (Ga. Ct. App. 2003) (quoting *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 505 S.E.2d 729, 730 (Ga. 1998)) (stating that the plain meaning of

unambiguous terms "'must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured'").

With respect to the second step, an "[a]mbiguity exists where the words used in the contract leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is open to various interpretations." *Gen. Steel*, 676 S.E.2d at 453.  *See also ESI Cos., Inc. v. Fulton Cnty.*, 609 S.E.2d 126, 129 (Ga. Ct. App. 2004) ("Ambiguity in a contract may be defined as duplicity, indistinctness, and uncertainty of meaning or expression.").  A jury question does not, however, automatically arise if the court finds that the contract is ambiguous.  *See Envision Printing*, 786 S.E.2d at 252.  Instead, the court must first apply the rules of construction to resolve the ambiguity.  *Id.*

To that end, "[t]he cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3.  *See also Nebo Ventures, LLC v. NovaPro Risk Sols., L.P.*, 752 S.E.2d 18, 26 (Ga. Ct. App. 2013) ("Enforcement of the parties' intent is superior to the other rules of construction.").  In the context of an insurance policy, an ambiguity is "strictly construed against the insurer as drafter of the document" as is any exclusion from coverage invoked by the insurer. *Richards v. Hanover Ins. Co.*, 299 S.E.2d 561, 563 (Ga. 1983).  The insurance

policy is also "read in accordance with the reasonable expectations of the insured where possible." *Id*.

"But an equally valid rule is that an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured." *Woodmen of World Life Ins. Soc. v. Etheridge*, 154 S.E.2d 369, 372 (Ga. 1967). Accordingly, the court "ha[s] 'no . . . right by strained construction to make [a] policy more beneficial by extending . . . coverage'" where none exists. *Id*. at 426.

The Court undertakes the analysis of the Policy with these principles in mind.

The Court first addresses Allstate's argument that Mehic failed to satisfy a condition precedent for coverage, *i.e.*, Mehic did not notify Allstate of the changes in use or occupancy of the Home prior to the fire. Because Mehic does not dispute that she failed to notify Allstate of the changes in use or occupancy of the Home that occurred prior to the fire, the question for the Court to decide is whether notification of a change in use is a condition precedent to coverage. If it is, then the failure to provide such notice would release Allstate from its coverage obligations under the Policy.

The "Suit Against Us" provision of the Policy is clear that Mehic may not bring suit against Allstate "unless there has been full compliance with *all* policy terms." ECF. No. 9-2 at 30 (emphasis added). Georgia courts analyzing similar provisions have interpreted this language as establishing a condition precedent to coverage. *See, e.g.*, *Progressive Mountain Ins. Co.. v. Bishop*, 790 S.E.2d 91, 94–95 (Ga. Ct. App. 2016) (agreeing that a provision stating the insurer "may not be sued unless there is full compliance with all the terms of [the] policy" is a condition precedent to coverage and finding that the plaintiff was required to show compliance with a notice provision of the policy—or demonstrate justification for failing to do so—to be entitled to coverage); *Townley v. Patterson*, 228 S.E.2d 164, 165 (Ga. Ct. App. 1976) (finding that terms prohibiting suit if there is not full compliance with the provisions of the policy "are conditions precedent to recovery and are binding against the insured"). Therefore, failure to comply with all provisions of the Policy would be a barrier to Mehic's suit for coverage.

The Insuring Agreement provision of the Policy is also unambiguous in its requirement that Mehic inform Allstate "of any change in title, use or occupancy" of the Home. Thus, Mehic's failure to inform Allstate of the changes in use of the Home violated the terms of the Policy, which means that the condition precedent to suit—that Mehic comply with *all* terms of the Policy—is not satisfied. *See*

11

*Barclay v. Stephenson*, 787 S.E.2d 322, 329 (Ga. Ct. App. 2016) (stating that a notice provision expressly made a condition to coverage must be satisfied and finding that "[a]n unjustified failure to give such notice ends the insurer's coverage obligations"); *Lankford v. State Farm Mut. Auto. Ins. Co.*, 703 S.E.2d 436, 438–39 (Ga. Ct. App. 2010) (noting that it is "well established that a notice provision expressly made a condition precedent to coverage is valid" and that the insurer is not obligated to provide coverage under the policy "[w]here an insured has not demonstrated justification for failure to give notice according to the terms of the policy").  Accordingly, the Court finds that Mehic's instant suit against Allstate is contrary to the Policy.

The Court is not persuaded by Mehic's argument that her failure to inform Allstate of the changes in use is irrelevant to the fire loss in 2020 because the "legally salient period . . . is the 30 days prior to the fire."  ECF No. 13 at 3-4.  Mehic's reliance on *Lyons v. Allstate Ins. Co.*, 996 F. Supp. 2d 1316, 1320 (N.D. Ga. 2014), as support for this argument is misplaced.  The *Lyons* court's reference to a "legally salient period" concerned whether the insured resided in the home at the time of the loss and not whether notice was properly given, as is pertinent here.

The Court is likewise not persuaded by Mehic's unsupported arguments that the loss occurred a year after Mehic's rental of the property and is "totally

12

unrelated to the rental period" and that "Allstate's acceptance of premium payments for 12 years mitigates against any condition precedent defense." ECF No. 13 at 3-4. Under Georgia law, "doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Danforth v. Gov't Emps. Ins. Co.*, 638 S.E.2d 852, 858–59 (Ga. Ct. App. 2006).

Further, Mehic's argument that the provisions of the Policy that would deny coverage should be ignored because "she cannot speak, read or write English" does not withstand analysis. By that same logic, the provisions that would provide coverage should also be ignored. In any event, Mehic had a duty to read the Policy and has not provided any reason that would excuse her from this duty. *See Canales v. Wilson Southland Ins. Agency*, 583 S.E.2d 203, 206 (Ga. Ct. App. 2003) (referring to "a long line of cases holding that a party to a contract—including an insurance contract—must read the contract").

In sum, because Mehic did not satisfy the condition precedent to bring this suit, and she offered no excuse or justification for failing to do so, the Court finds

that her suit against Allstate is contrary to the Policy.[2]  Accordingly, the Court **GRANTS** Allstate's Motion (ECF No. 9).  Allstate is dismissed from this action, and the Court is **DIRECTED** to close the case.

**SO ORDERED** this 14th day of February, 2022.

J. P. BOULEE
United States District Judge

---

[2] In light of this finding, the Court does not reach Allstate's other arguments for summary judgment.